UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:24-cr-00057-LEW |
| | ) | |
| YANCARLOS ABRANTE & | ) | |
| JOSHUA ESTRADA | ) | |
| | ) | |
| Defendants | ) | |

**<u>ORDER ON DEFENDANTS' MOTION TO COMPEL DISCOVERY</u>**

This matter is before the Court on Yancarlos Abrante's and Joshua Estrada's ("Defendants") Motions to Compel Discovery ("Motions") (ECF Nos. 195, 196). Defendants request that the Court determine whether the Government is required to disclose the information at issue. For the reasons that follow, the Government is not required to disclose the information, and Defendants' Motions are Denied.

BACKGROUND

The procedural travel of this case is unusual. Defendants' Motions arise out of the sentencing of their co-defendant, Jason Johnson-Rivera. On or about February 9, 2024, the moving Defendants and Johnson-Rivera participated in a drug conspiracy that culminated in a shooting in Saco, Maine. All three co-conspirators were charged by complaint in May of 2024, and originally sought to plead guilty, and none filed any pretrial motions. In September of 2025, Defendants plead guilty (ECF Nos. 115, 119) to the Superseding Indictment (ECF No. 95), which set forth charges that would call for a mandatory minimum sentence of twenty years. Unlike Defendants, co-defendant Johnson-

Rivera changed his mind and chose to proceed to trial rather than plead guilty. During additional plea negotiations concerning Johnson-Rivera, the Government considered a variety of factors, including information about one of the investigating officers that contributed to a substantially more favorable negotiated plea agreement for Johnson-Rivera by withdrawing two of the three counts in the Indictment and effectively reducing his sentence from twenty years down to ten years.

At Johnson-Rivera's sentencing, I inquired into the differences between Johnson-Rivera's plea agreement and those of Defendants. Sentencing Tr. 5:18-23 (ECF No. 193). To explain the strikingly more favorable plea agreement offered to Johnson-Rivera, the Government pointed to "vulnerabilities in the case" that presented a potential "litigation risk." Sentencing Tr. 9:6-13 (ECF No. 193). When this Court asked whether the same vulnerabilities existed in Defendants' cases, the Government responded in the affirmative. Sentencing Tr. 10:2-6 (ECF No. 193).

The material the Government referred to during Johnson-Rivera's sentencing as a "litigation risk" is a fifteen-year-old "feedback report" concerning Officer-1, a witness the Government planned to call had Defendants proceeded to trial (ECF Nos. 197, 198(sealed)).

## STANDARD OF LAW

Under *Brady v. Maryland* and its extensive progeny, the Government must disclose evidence favorable to the accused when it is material to guilt or punishment. 373 U.S. 83, 87 (1963). To establish a *Brady* claim, a defendant must show that the evidence was suppressed, favorable to the accused, and material to guilt or punishment. *United States v.*

*Cruz-Feliciano*, 786 F.3d 78, 87 (1st Cir. 2015) (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)).

Evidence is considered material if there is a reasonable probability that disclosure of the evidence would have changed the proceeding's result, and favorable if it is exculpatory or impeaching. *United States v. Cruz-Feliciano*, 786 F.3d 78, 87 (1st Cir. 2015); *Barrett v. United States*, 965 F.2d 1184, 1189 (1st Cir. 1992); there is a reasonable probability that the disclosure would have changed the proceeding's result when there is an objective, reasonable probability that, but for the Government's nondisclosure, a defendant would not have pleaded guilty and instead would have gone to trial. *Ferrara v. United States*, 456 F.3d 278, 293-294 (1st Cir. 2006) (citing *Hill v. Lockhart,* 474 U.S. 52, 59 (1985)). A reasonable probability is probability sufficient to undermine confidence in a belief that a defendant would have entered a guilty plea. *Id.*

DISCUSSION

At issue is the narrow matter of whether the information that the Government characterized as a "vulnerability" and "litigation risk" during Johnson-Rivera's sentencing hearing must be disclosed to Defendants. Defendants are frustrated by the Government's limited reasoning for the nondisclosure, i.e., that "public disclosure of the information contained in one of the memoranda could negatively impact Officer-1's reputation" (ECF No. 199).[1] They assert that the drastic difference between Johnson-Rivera's plea

[1] It is inappropriate to opine on how the information formed the development of the Government's plea deal to Johnson-Rivera. There is no *Brady* violation, and when Defendants took their plea deals, their deals became final, even if new information arose that would have made their positions more favorable had they chosen not to take the plea deals. Fed R. Crim. P. 11.

agreement and their own, in addition to the Government's behavior at Johnson-Rivera's sentencing indicate that the undisclosed material is both favorable and material to Defendants. But Defendants are unaware of Officer-1's role in the investigation and the impact that the feedback report would have on Officer-1's credibility.

The Government filed a sealed supplemental memorandum in support of its Response, which, among other things, discusses Officer-1's role in the investigation and the marginal impact the undisclosed material would have on his credibility (ECF No. 198 (sealed)).

Whether the Government may be compelled to disclose the information to Defendants turns on whether the information is material under *Brady*. That is, whether there is a reasonable probability, but for the non-disclosure, that Defendants would have chosen to proceed to trial. *Ferrara* at 456 F.3d at 293-294. In *Ferrara*, the First Circuit provided a non-exhaustive set of factors relevant to the reasonable probability inquiry: (1) whether the suppressed evidence would have detracted from the factual basis used to support the plea; (2) whether it could have been used to impeach a witness whose credibility may have been outcome-determinative; (3) whether the evidence was cumulative of material already in the defendant's possession; (4) whether the evidence would have influenced counsel's recommendation as to the desirability of accepting the plea bargain; and (5) whether the value of the suppressed evidence was outweighed by the benefits of the plea agreement. *Id.* These factors assist in determining whether the totality of the circumstances demonstrate a reasonable probability that Defendants would continue to trial, but for the nondisclosure of the information. *Id.*

As to the first factor, based upon the Government's description of the undisclosed information, I find that the information does not detract from the factual basis that supports Defendants' guilty pleas. The factual basis contained in the Prosecution Versions (ECF Nos. 112,113) depicts a conspiracy to sell cocaine in the Saco area which resulted in the shooting in February of 2024. The Government's sealed supplemental memorandum states that Officer-1's testimony would have been largely procedural, testifying to what he saw while collecting the evidence, not anything about the factual disposition of the case. I find nothing in the record to suggest that Officer-1's role in the investigation of Defendants extended beyond the scope of that function.

As to the second factor, potentially outcome-determinative impeachment value, Officer-1's testimony would have been necessary in the proceedings to introduce certain evidence at trial, including introducing physical evidence obtained during the investigation, assisting in authenticating video evidence recovered by investigators, providing a timeline of the investigation, introducing and authenticating items and photographs obtained during the execution of search warrants, and introducing business records (ECF No. 198). However, even if the undisclosed material had been used to impeach Officer-1's credibility, that credibility would not be outcome-determinative. The Government persuasively demonstrates that the testimony of rival drug dealer-victims and customers of Defendants would corroborate any evidence that Officer-1 introduced. Officer-1 would have been one of twenty witnesses in addition to a substantial amount of physical evidence, including electronic messages about heightened tensions and threats of violence between Defendants and other co-conspirators, videos of the shooting caught on the cameras of

surrounding area businesses, and video footage from a driver who witnessed the shooting incident showing both Defendants exiting the vehicle and fleeing the scene on foot (ECF No. 112). The case does not depend on Officer-1's credibility, but rather upon the evidence he would introduce, corroborated by other witnesses and by independent physical evidence. As a consequence, factor two does not offer Defendants any traction. *See Conley v. United States*, 415 F.3d 183, 189 (1st Cir. 2005) ("The Supreme Court, for example, has found *Brady* violations where the Government failed to disclose impeachment evidence that could have been used to impeach the credibility of the Government's "key witness," . . . or that could have "significantly weakened" key eyewitness testimony . . . .") (citations omitted); *United States v. Martinez–Medina,* 279 F.3d 105, 126 (1st Cir. 2002) (noting impeachment evidence can be prejudicial "where the evidence is highly impeaching *or* when the witness' testimony is uncorroborated and essential to the conviction.") (emphasis added).

As for the remaining three factors, none is helpful to Defendants as I will explain from the "totality of the circumstances" perspective. The evidence is not cumulative, nor is it material to guilt or punishment, such that it would have influenced counsels' recommendations about accepting the plea offers or rendered the plea agreements meaningfully less beneficial to Defendants. The Prosecution Versions, available to each Defendant before pleading guilty, provided proposed evidence to be presented against Defendants had they chosen to proceed to trial. The Prosecution Versions relay details of the conspiracy, including the physical evidence that was left behind after the shooting in Saco – two firearms, two phones, a digital scale coated with white power that tested

presumptively positive for cocaine base, ammunition (including the same brand of shells as casing found at the shooting scene), and both Defendants' DNA. The Prosecution Versions also state that witnesses would testify to corroborate the theory that the Saco shooting in February of 2024 was in furtherance of a drug trafficking conspiracy.

Had Defendants known of the feedback report about Officer-1 at the time of their guilty pleas, I find that there was not a reasonable probability that they would have rejected the pleas and proceeded to trial. The fifteen-year-old feedback report contains one statement by Officer-1 concerning a different matter. Considering the totality of the circumstances, an objectively reasonable defendant, confronted with the evidence reflected in the Prosecution Versions, would not have elected to go to trial based on an isolated, temporally remote, and factually unrelated item of potential impeachment.

Finally, whether the information is favorable to Defendants does not resolve the materiality inquiry, which is central to my analysis. Undisclosed information must be both favorable (or exculpatory) and material to be a *Brady* violation. Here, the information is not exculpatory – it concerns feedback about a witness and does not connect to the charged conduct. Nor is it favorable for impeachment purposes given the report's remoteness in time and lack of factual connection to the case. The Government persuasively described in its sealed memorandum that the feedback report, at most, reflects an isolated and temporally remote incident that does not provide impeachment value here. *See United States v. Jones*, 725 F. App'x 763, 765–66 (11th Cir. 2018) (defendant failed to show reasonable probability of a different outcome given the witness's minimal involvement and the investigation's limited relevance); *People v. Hickey*, 204 Ill. 2d 585, 606–07, 792

N.E.2d 232, 247–48 (2001) (no *Brady* violation where undisclosed evidence of a forensic analyst's disciplinary settlement was too remote and speculative to impeach because the analyst's DNA testing predated the misconduct by two years, rendering the evidence neither material nor favorable).

And even if the information could be deemed impeaching and therefore favorable to Defendants, the inquiry ultimately fails at the materiality step of the *Brady* test.[2]

CONCLUSION

The Court declines to compel the discovery of the undisclosed materials from the Government because the material at issue fails the *Brady* materiality test. Defendants' Motions to Compel Discovery Documents (ECF Nos. 195, 196) are DENIED. Defendants shall proceed to sentencing.

**SO ORDERED.**

Dated this 24th day of November, 2026.

/s/ Lance E. Walker
Chief U.S. District Judge

[2] The Government's Response on the public docket does not describe why the undisclosed material is not favorable to Defendants. It leaves that analysis for its sealed memorandum. Instead, it focuses on why it is not required to disclose the impeachment evidence, which is not a component of the *Brady* inquiry. Gov't Resp. at 8-9 (ECF No. 197). The Government acknowledges that had Defendants undergone any pretrial motion or evidentiary hearing, they would have turned over the potentially impeaching information, but when Defendants pleaded guilty, they lost their opportunity to receive such information.

The *Brady* test does not turn on the Government's internal disclosure plan or its intent to disclose at a later point in the proceedings. The inquiry here is whether the information is favorable and material to Defendants such that, but for the nondisclosure, Defendants would have chosen to proceed to trial.